UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

| | |
|---|---|
| Franco Torrescano DeLaTorre, | Civil File No. 16-CV-00235 (JNE-TNL) |
| Plaintiff, | |
| v. | **AMENDED COMPLAINT** |
| Minnesota State High School League, Dave Stead, individually and in his official capacity, and Craig Perry, individually and in his official capacity. | **JURY TRIAL DEMANDED** |
| Defendants. | |

_____

COMES NOW Plaintiff Franco Torrescano DeLaTorre ("Franco") as and for his Verified Complaint against Defendants The Minnesota State High School League ("the League"), David Stead ("Stead") and Craig Perry ("Perry") (collectively "Defendants"), states and alleges as follows:

## I.   PRELIMINARY STATEMENT

1. This is an action for declaratory relief and money damages arising out of the injury and damage sustained by Franco as a result of the unconstitutional vagueness and arbitrary application of the Minnesota State High School League bylaws. Plaintiff seeks relief from Defendants for improperly denying Franco, a student, of eligibility for varsity athletics at Cretin Derham Hall High School. Under Minnesota law, varsity eligibility is a constitutionally protected property right which cannot be taken away without due process. Due to the untimely and arbitrary application of the Bylaws by the Defendants, Franco was denied a constitutionally protected right without due process.

## II.     JURISDICTION

2. Plaintiff brings this action pursuant to 42 U.S.C §§ 1983 and 1988, the Fourteenth Amendment to the United States Constitution, 28 U.S.C. §§ 1331 and 1343, and 28 U.S.C. § 1367. This Court has original jurisdiction over Count One and supplemental jurisdiction over Count Two.

3. Venue in this District is authorized by 28 U.S.C. § 1391 (b) due to the fact that the League and Defendants Stead and Perry conduct business or reside in this District and because this District is where a substantial part of the events or omissions giving rise to the claims occurred.

## III.     PARTIES

4. Franco is an eighteen year-old male who resides in St. Paul, Minnesota.

5. Defendant the Minnesota State High School League is a domestic non-profit corporation formed under Minn. Stat. § 317A and has a registered Office Address of 2100 Freeway Blvd., Brooklyn Center, MN 55430.

6. Defendant David Stead is a party in his individual and representative capacity as the Executive Director of the League.  Stead acted as an agent or employee of the League at all relevant times and under the color of state law.  On information and belief, Stead is a resident of the State of Minnesota.  Stead was responsible, in part or in whole, for barring Franco from varsity athletics despite having received notice that the League had posted inaccurate and outdated bylaws on its website which Franco appropriately relied on in believing that he would be eligible to return to Cretin Derham High School to play varsity athletics after spending a year in Mexico with his biological father.

7.      Defendant Craig Perry is a party in his individual and representative capacity as the Associate Director of the League. Perry acted as an agent or employee of the League at all relevant times and under the color of state law. On information and belief Perry is a resident of the State of Minnesota. Perry was responsible, in part or in whole, for barring Franco from participation in varsity athletics. In July 205, Perry instructed Cretin Derham Hall High School to declare Franco ineligible. On August 17, 2015, Franco requested that the League provide him with a hearing so that he may challenge its interpretation of the League's Bylaws. A month later, Perry responded on September 17, 2015 denying Franco's request for a hearing.

### IV.     FACTUAL ALLEGATIONS

8.      Franco's mother and father were divorced in Mexico in 2003.

9.      Franco, his sister and his mother moved to the United States in 2012 with the permission of Franco's biological father who at all times has lived in Mexico. Franco's biological parents agreed in 2012 that Franco would return to Mexico to live with his biological father for one year in high school.

10.     Following Franco's eighth grade year at a Minnesota catholic school, Franco's biological father wanted him to return to Mexico and attend school in Mexico, however after consulting with Franco's teachers, it was decided that Franco would benefit from another year at a high school in Minnesota to attain fluency in English.

11.     Franco attended ninth grade at Cretin Derham Hall High School.

12.     Following Franco's ninth grade year at Cretin Derham Hall High School, Franco's stepfather, Andy Sandkamp ("AS"), reviewed League bylaws that he obtained online which defined a "transfer student" to be "one who discontinues enrollment and attendance in any

3

high school, public or non-public, located in a public school district attendance area and enrolls and attends classes in any other high school *in Minnesota.*" (emphasis added).

13. In deciding what was in Franco's educational best interests, Franco, his parents and AS relied on the definition of a transfer student quoted in the preceding paragraph, which was made available online to the public by the League.

14. Franco moved to Mexico in 2014 to live with his biological father; and he attended tenth grade in Mexico for the 2014-2015 school year.

15. During Franco's tenth grade year in Mexico, Franco regularly talked with friends he had made at CDH; Franco decided that he wanted to return to Cretin Derham Hall High School and to play soccer with his friends there in 2015-2016.

16. Following Franco's tenth grade year in Mexico, Franco's biological parents agreed that it was in the best interest of Franco to return to Cretin Derham Hall High School.

17. Franco contacted Cretin Derham Hall High School and started the re-enrollment process in the spring of 2015.

18. In mid-July, 2015, AS contacted Cretin Derham Hall High School to confirm that Franco would be eligible to play varsity soccer at the school for the season beginning in August 2015.

19. On July 16, 2015, the Athletic Director of Cretin Derham Hall emailed Perry informing him of Franco's return to the school, and seeking confirmation that Franco would be eligible for varsity competition at Cretin Derham Hall for the 2015 – 2016 school year.

20. On July 20, 2015, Perry responded to Cretin Derham Hall stating that Cretin Derham Hall's "eligibility interpretation was incorrect. The student has two transfers. . . . the student is ineligible to compete at the varsity level at CDH for the 2015-2016 school year."

21. On July 20, 2015 Cretin Derham Hall responded to Perry's determination by stating its disagreement with Perry's determination of ineligibility and referencing that the bylaws allowed that "[t]he student may utilize this provision [divorce waiver – Bylaw 111.1.B(iv)] only one time during grades 9-12 inclusive" and concluding that Franco "has not used the provision and would be looking to use it [the divorce waiver] on this transfer."

22. Perry responded to Cretin Derham Hall's statement of disagreement later that same day, July 20, 2015, by stating, in full, that "[t]he divorce custody option is used when he transferred to the school in Mexico. Now he transfers back to your school and he has a one-year varsity competition suspension."

23. Perry informed Cretin Derham Hall on August 5, 2015 that the League would not consider Franco's request for a hearing to challenge his determination that Franco was ineligible for varsity competition until the *start of the fall sports season*. This decision by Perry effectively removed any timely due process intervention by which Franco might have avoided the harm associated with Perry's arbitrary determination of ineligibility communicated to Cretin Derham Hall High School on July 20, 2015.

24. On August 17, 2015 (the first day of the start of the League fall sports season) Cretin Derham Hall sent Franco's request for a hearing to Perry.

25. On August 31, 2015 Cretin Derham Hall inquired of Perry as to the determination regarding Franco's request for a due process hearing in the matter of Franco's eligibility to play varsity sports at the school in 2015.

26. On September 2, 2015, Perry emailed Cretin Derham Hall and informed the school that the request for a hearing was denied, adding that "a letter with additional information will be sent to you in 3-5 business days."

27. On September 14, 2015, Cretin Derham Hall again contacted Perry to inquire as to why it had not received the additional letter that had been promised on September 2, 2015.

28. AS placed several calls the week of September 14, 2015 to the League asking why the letter promised to Cretin Derham Hall on September 2, 2015 had not been provided. AS left two voicemails with Stead.

29. On September 16, 2015, AS emailed the League, stating that he had "yet to receive the written response to our request for a fair hearing on my step son's request. We received an email from Jodi AD at CDH that we would receive a letter in the mail 2 weeks ago. I am still perplexed by the ruling of ineligibility and the denial for a fair hearing. The rules attached would indicate he is not a transfer student as he left Minnesota. At the very least he would be eligible under the one time exception for a custody situation."

30. On September 17, 2015, the League provided Cretin Derham Hall with a document titled "Findings of Fact and Conclussions [sic]" that was dated September 10, 2015. The League did not explain why it sat on the letter for seven days. Attached as Exhibit A and incorporated herein is a copy of Perry's letter dated September 10, 2015 that was emailed to Cretin Derham Hall on September 17, 2015 as referenced in this paragraph.

31. Perry's "findings" letter was addressed to Jodi Loeblein-Lecker, Cretin Derham Hall Athletic Director.

32. Perry's "findings" letter did not reference or respond or in any way address the assertion by Franco and Cretin Derham Hall that Franco had not elected to use the one-time divorce waiver provided by Bylaw 111.1.B(iv) when he transferred to the high school in Mexico, nor Franco's appeal's statement that Franco was electing to utilize the divorce waiver at the

6

present time in connection with his transfer from the Mexican high school back to Cretin Derham Hall.

33. Rather than address Franco and Cretin Derham Hall's arguments referenced in the preceding paragraph, Perry only concluded that the "family decision [to have Franco live one year with his biological father attend 10th grade in Mexico] does not constitute special or unusual circumstances justifying the waiver of the transfer and residence bylaw. Therefore, the request for a hearing is denied. [FT] will be eligible to compete at the varsity level at the beginning of the 2016-2017 school year."

34. In response to Perry's summarily denying Franco a hearing on September 17, 2015, that same day AS, Franco's step-father, sent an email to the League, addressed to Perry and Stead, explaining that Franco was not a transfer student because he transferred to a school outside the state of Minnesota; AS further raised the issue that even if Franco was deemed to be a transfer student, he would be eligible to utilize the one-time divorce waiver which would allow him to be eligible.

35. AS's September 17, 2015 email to Perry and Stead also stated that "the league also allows for eligibility following a move due to a custody agreement. It doesn't follow that he would have used this one time exception in Mexico."

36. AS's September 17, 2015 email concluded by stating that "[i]f the rules and guidelines are followed a Fair Hearing and Appeal should not be necessary. If there is a question around the rule and guidelines set forth by the MSHSL we should be granted a fair hearing. We are trying to understand why would the MSHSL want to punish a child by not following its own prescribed rules?"

7

37. On September 18, 2015, AS reached out to legislators regarding Franco's hearing denial, and subsequently spoke with a state representative who stated his intent to communicate with the league and press for Franco's hearing rights.

38. Between September 21, 2015 and September 24, 2015, AS made daily calls to the League asking to speak with Stead but was not able to reach him. In the morning of September 24, 2015, AS spoke to his assistant who said she would get Stead the message that AS was trying to reach him regarding Franco and his September 17, 2016 email to Stead.

39. Stead and AS spoke on the phone in the morning of September 24, 2015 regarding the issues and stated his disagreement with the transfer language AS read to him. AS stated he would email him the link to the language. After AS's phone conversation with Stead, AS emailed Stead the following, then-active website-link, http://www.mshsl.org/mshsl/news/transferbylaw.doc, and stated his continued request for a hearing on behalf of FT.

40. Stead responded on September 24, 2015 to AS's email described in the previous paragraph, and informed AS that AS must have "googled a question about an eligibility transfer bylaw rather than reference the most current MSHSL Official Handbook." Stead assured AS in the same email that "[i]n order to ensure that future inaccuracies . . . do not confuse people, the [website link] is now inactive." Stead invited AS to speak to the League's eligibility committee on October 1, 2015. Attached hereto as Exhibit B and incorporated herein is a copy of Stead's September 24, 2015 email to AS as referenced in this paragraph.

41. After AS's repeated emails continuing to request a hearing for Franco rather than simply speaking to the eligibility committee, Stead agreed on September 25, 2015 that the League would provide Franco a hearing on October 6, 2015.

42. At the October 6, 2015 hearing ("the Hearing"), Franco's counsel argued to the hearing officer that Perry's determination that the divorce waiver was utilized when Franco was in Mexico was without merit because Franco never elected to use the one-time waiver while he was in Mexico. Franco's counsel cited League bylaw 111.1.B.(iv)'s language specifically stating that "the *student* may utilize this provision only one time during grades 9 – 12 inclusive." (emphasis added).

43. Nowhere in the League's bylaws does it state that the League determines when the said divorce waiver is invoked or utilized or applied to a student transfer.

44. At the Hearing, Perry and the League's attorney stated that no student had ever been allowed to determine when the divorce waiver would be utilized in connection with a school transfer.

45. The League argued at the October 6, 2015 hearing that there was a "longstanding interpretation" that required the divorce wavier be applied to the student's first transfer.

46. The Hearing was the first time that the League had communicated the existence of the "longstanding interpretation" referenced in the previous paragraph herein.

47. Perry, by and through the Attorney for the League at the hearing held on October 6, 2015, advised the Hearing Officer Richard John Miller that such a "long standing interpretation" of the divorce waiver was required to be upheld by the Hearing Officer in the case of FT.

48. No evidence was provided to support the "longstanding interpretation" by either Perry or the Attorney for the League at the hearing held October 6, 2015.

49.     At the Hearing, the Cretin Derham Hall Athletic Director expressed surprise at the Attorney's contention of the "long standing interpretation" that required the divorce waiver to be applied by the League to the first transfer.

50.     The League's Attorney articulated disbelief that an Athletic Director in the State of Minnesota would not be aware of "the longstanding interpretation" and stated that it should have been known to the athletic director that a student has "never" been allowed to decide when to seek a waiver of the Transfer rule and stated that such a reading of the ByLaw would result in absurd outcomes.

51.     In response to the League's argument regarding the "longstanding tradition" referenced in the previous paragraphs herein, Counsel for Franco argued to the Hearing Officer that the League's previous communications had never referenced this new argument, and argued that the League's position at the Hearing begged the question, why did Perry not present that "longstanding interpretation" in his September 24 2015 Findings of Fact and Conclusions?  The League did not address this question at the Hearing nor did Hearing Officer Miller ask the League to provide him an answer.

52.     On October 7, 2015, after examining a previous case file that involved a League hearing for a client in September, 2015, and after obtaining permission from the said client for the use of the Hearing Officer's ruling in that case, Franco's counsel sent an e mail to Hearing Officer Richard John Miller and League League Attorney Joseph Kelly requesting the introduction of a League document, to-wit the Findings and Conclusions and Recommendations of Judge Michael DeCourcy who presided over an independent hearing at the League office in connection with a transfer case similar to the case of Franco on September 10, 2015.  Franco's counsel explained that the League's own document which had been presented and reviewed and

10

approved by the League's Eligibility Committee and Full Board of Directors on October 1, 2015 (only 5 days before Franco's hearing on October 6, 2015) rebutted Perry's assertion and the LEAGUE Attorney's statement that no student had ever been allowed to decide when the divorce waiver would be used in connection with a school transfer.  In point of fact, the Hearing Officer (former Ramsey County Judge Michael DeCourcy) had specifically affirmed a student's right to elect to utilize the transfer suspension waiver contained in the divorce exception in connection with a second school transfer in his Findings, Conclusions and Recommendations issued on September 16, 2015.

53.   When Franco's counsel requested that Officer Miller review Judge DeCourcy's September 16, 2015 decision, the League's Attorney, Joseph Kelly, objected to Hearing Officer Miller's consideration of the League's own document; the Attorney for League went on to advise the Hearing Officer that Franco's counsel had committed a violation of Data Practices Act by her attempt to introduce the League's document and would be the subject of an investigation in connection therewith.

54.  When Hearing Officer Richard John Miller advised counsel for Franco that he would grant the Attorney for the League as much time as he needed to fully respond to the request for the introduction of the Findings, Conclusions and Recommendations of Judge DeCourcy, counsel for Franco reminded Hearing Officer Richard John Miller that time was of the essence in terms of his decision as to whether Franco would be eligible to play soccer; that unless the decision regarding Franco's eligibility was decided by Tuesday October 13, 2015, the soccer season at Cretin Derham Hall High School would be over;  when Hearing Officer Richard John Miller refused to set a time limit on when the League would need to submit a written response to the request for the introduction into evidence of Judge DeCourcy's ruling from September 16,

2015, counsel for Franco had no option other than to withdraw the request for the introduction of the League's document.

55. Hearing Officer Richard John Miller issued his recommendation that Franco remain ineligible for varsity competition on October 12, 2015. Officer Miller cited the "longstanding tradition" that the League stated to exist and held that "the student did not successfully refute the statements made by [the League] at the hearing that the long-standing past practice of the League has consistently been that the League and not the student determines when the employ the one-time divorce waiver under Bylaw 111.1.B(iv)." Officer Miller concluded that "as a result, the League correctly determined" that Franco was ineligible. Attached hereto as Exhibit C and incorporated herein is a copy of Officer Miller's recommendation.

56. Officer Miller's written recommendation and memorandum made no mention of Judge DeCourcy's decision and the League's failure to argue for the alleged "longstanding tradition" during that case which was approved by the Eligibility Committee and the Full Board of Directors on October 1, 2015.

57. Following Officer Miller's October 12, 2015 recommendations, Franco's counsel requested time to speak to the League's eligibility committee on December 3, 2015, which was scheduled to review Officer Miller's recommendation prior to the entire board of directors' vote on the matter.

58. Franco and his counsel spoke to the League Eligibility Committee on December 3, 2015 and learned later that the League decided to table the decision until its next meeting in January 2016.

59. On or about January 11, 2016, five days after League's Eligibility Committee again took up Franco's matter on January 5, 2016, the League communicated to Cretin Derhm

12

Hall High School (although not Franco's counsel), that the eligibility committee had voted 5-0 to affirm the decision of Officer Miller.

60.     The League's communication to Cretin Derham Hall also informed the school that via a 3-2 voice vote, the committee passed a motion to grant varsity eligibility to Franco for the remainder of the 2015 – 2016 school year on the grounds that the student's mother and father held a good faith belief that the League's bylaws "would not be applied for a student transferring" to Mexico and back, and that Franco's step-father believed outdated bylaws he found on the internet still applied.

61.     The Eligibility Committee's decision to allow Franco eligibility for the remainder of the 2015 – 2016 school year was made "subject to approval by the MSHSL Board of Directors at the February 4, 2016 meeting.

62.     On February 4, 2016, the MSHSL Board of Directors approved the motion by the Eligibility Committee and declared Franco eligible, and upon information and belief, its decision incorporated the Eligibility Committee's decision to adopt the recommendation of Hearing Officer Miller.

63.     League bylaws routinely include sections titled "BYLAW [Number] INTERPRETATION", which is followed by language providing notice of League interpretation and application of League bylaws.  Bylaw 100 and its subsections, include 5 such "interpretation" sections, however there is no "interpretation section" provided for League bylaw 111.00.B(iv) to provide notice that a "longstanding tradition" exists as referenced in paragraph 46 herein and which was relied on by the League in its denying Franco's participation in varsity athletic competition.

64. League bylaws routinely include sections titled "BOARD POLICIES". No "Board policy" section exists regarding League bylaw 111.00.B(iv) which would provide notice that a "longstanding tradition" exists as referenced in paragraph 46 herein and which was relied on by the League in its denying Franco's participation in varsity athletic competition.

## V. CAUSES OF ACTION

### COUNT ONE
### 42 U.S.C. § 1983 – Fourteenth Amendment Due Process Violations
### All Defendants

65. Plaintiff realleges the allegations contained elsewhere in this Complaint as though fully set forth in this Count.

66. Education is a fundamental right and a property interest protected by the Fourteenth Amendment to the United States Constitution and Article XIII (Education Clause) of the Minnesota Constitution, which extends to participation in interscholastic athletic eligibility.

67. The actions of the League, Stead and Perry described in this Complaint in barring Franco from eligibility in varsity athletics were under color of state law.

68. At a minimum, due process requires that any deprivation of property by adjudication be preceded by notice and a meaningful opportunity to be heard appropriate to the nature of the case.

69. Due process requires that the League provide Franco with clear notice that the League's bylaws would apply to render him ineligible for varsity competition upon his return to CDH from Mexico.

70. By publishing old and inapplicable bylaws on its website, the League failed to provide Franco notice that its definition of a "transfer student" included transfers to or from states – or nations – outside of Minnesota.

71.     The public has no meaningful and legitimate access and notice to the League's claim that there exists a "longstanding interpretation" by the League that the divorce waiver exception under bylaw 111.1.B must apply to the first transfer such exception could apply to.

72.     Upon information and belief, the League knowingly argued that the "longstanding interpretation" existed despite knowing that such interpretation did not exist and that such interpretation contradicted the plain language of Bylaw 111.1 B(iv).

73.     Franco was wrongfully denied an opportunity to be heard regarding the League's determination that he was ineligible for varsity competition from August 2015 until October 6, 2015, during which time he was denied the ability to play varsity soccer at Cretin Derham Hall.

74.     The League's use of previously unarticulated arguments against Franco's eligibility at his October 6, 2015 hearing before Hearing Officer Miller deprived Franco of an adequate ability to be heard.

75.     The League's argument for the existence of a "longstanding interpretation" of the divorce waiver in Franco's case and not in a similar case that was heard and adjudicated less than a month prior to Franco's case demonstrates a willful and arbitrary manipulation of its bylaws, to-wit, the manipulation of prior Hearing Officer decisions involving its bylaws, the disparate application of the bylaws from case to case, the deliberate obfuscation and misstatement of bylaw authority in connection with its eligibility determinations.

76.     The League's bylaws, as written, failed to provide Franco with due process protections appropriate to the seriousness of the constitutionally guaranteed property rights which the League oversees and regulates in its capacity as a quasi-state agency acting under color of state law.  Attached as Exhibit D hereto and incorporated herein is a copy of League Bylaws 100 and 300.

77.     The League represents to the public that all students have a right to appeal an eligibility decision to the League, specifically its website represents:

Q.    What is due process?

A.    Due process, or Fair Hearing Procedure, is the procedure by which a student who has been declared ineligible by the school has the opportunity to request a hearing at the local level conducted by a neutral hearing panel to re-examine the facts of the case and render a decision on the student's eligibility. <u>If the student is still not convinced that the eligibility decision was fair and impartial, the student has the right to appeal to the MSHSL for a hearing.</u>

(emphasis added).

78.    The League's 2015-2016 "ELIGIBILITY BROCHURE", which is provided to all students prior to MSHSL participation, states as follows concerning its appeals process:

**17. FAIR HEARING PROCEDURE** — The League Constitution provides a Fair Hearing Procedure for the student or parent contesting a school's determination of ineligibility for a student. **The student has 10 calendar days in which to appeal the school's decision**. The appeals process includes an appeal before a hearing panel at the school and the right, if desired, to appeal that decision to the League's Board of Directors. An independent hearing examiner will hear the appeal and make written findings of fact, conclusions and a recommendation for the Board of Directors following the hearing. The Board's decision shall be final. A complete listing of the Fair Hearing Procedure may be obtained from the athletic director or principal of the high school or on Web at www.mshsl.org in the Publications section.

79.    The League's 2015-2016 "ELIBIGILITY BROCHURE" also provides notice to students of divorced parents that they are eligible despite the general transfer ineligibility rules, if:

4. Divorced Parents: a student of legally divorced parents who have joint physical custody of the student may move from one custodial parent to the other custodial parent and be fully eligible at the time of the move. The student may utilize this provision only one time during grades 9-12 inclusive.

80.    After being denied a hearing from August 2015 until October 6, 2015, Franco learned that this representation was not true and that the League's bylaws only provide an ability to *request* a hearing. No guidance or information was ever provided by the League to Franco

regarding the process and procedures utilized by the League in determining whether a *request* is granted or denied.

81. No rational basis exists for the League to prohibit a student from participation in interscholastic varsity competition after transferring from a foreign nation to a Minnesota high school to live with a parent.

82. No rational basis exists for the League to determine eligibility differently for students of divorced parents based on language contained in divorce decrees as is currently provided for in League Bylaw 111.1.B(iv).

83. No rational basis exists for the League to require that a student who transfers high schools for any reason must be ruled ineligible for varsity competition at the new school for a period of one year.

84. Therefore the Defendants' actions, interpretations, and enforcement of the bylaws as well as the wording of the bylaws themselves constitute violations of Franco's due process rights under the Fourteenth Amendment to the United States Constitution. As a result of these violations, Franco is entitled to relief pursuant to 42 U.S.C. § 1983.

85. The defendants acted with reckless or callous indifference for Franco's federally protected rights.

86. Punitive damages are available against all defendants and are hereby claimed as a matter of federal common law, Smith v. Wade, 461 U.S. 30 (1983).

87. Franco is entitled to recovery of their costs, including reasonable attorneys' fees, under 42 U.S.C. § 1988.

88. As a direct and proximate cause of the action or inactions of Defendants, Franco has suffered significant social, emotional, and educational harm and has been damaged in an amount to be determined at trial.

89. Plaintiff is entitled to monetary damages in an amount to be determined at trial.

## COUNT TWO
### Breach of Contract by the Minnesota State High School League

90. Plaintiff realleges the allegations contained elsewhere in this Complaint as though fully set forth in this Count.

91. The bylaws represent a binding agreement on Franco and the League with regard to interscholastic athletic eligibility and participation.

92. Franco has complied with every provision of the League's bylaws.

93. The League is the drafter of the bylaws, and as a non-profit corporation has an contractual obligation to abide by its bylaws.

94. The League has failed or refused to comply with its bylaws in determining Franco to be ineligible and has thereby breached its contract with Franco.

95. If the Court determines that the bylaws are ambiguous, said ambiguity is to be interpreted against the League as drafter.

96. Plaintiff is entitled to monetary damages in an amount to be determined at trial.

### VI.    PRAYER FOR RELIEF

Therefore, Plaintiff respectfully requests that this Court

1. Exercise jurisdiction over this action;

2. Declare that students in Minnesota have a constitutionally protected right to be eligible to participate in varsity athletics;

    3.      Declare that the League did not afford Franco with an adequate right to be heard, nor other basic constitutional protections following the its actions to prohibit Franco from being eligible to participate in varsity athletics at Cretin Derham Hall High School;

    4.      Declare that the League's appeals process under its Bylaws 111 and 300 are vague, confusing and do not provide students with an adequate right to be heard, nor other basic constitutional protections under Minnesota law and the Fourteenth Amendment of the United States Constitution;

    5.      Declare that League Bylaw 111.1B(iv) unlawfully discriminates between students with divorced parents in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;

    6.      Award compensatory and punitive damages against all Defendants, jointly and severally, including costs and attorney's fees as appropriate, for Count One;

    7.      Award compensatory damages against Defendant The Minnesota State High School League, including costs, for Count Two;

    8.      Provide such other and further relief as the Court deems just and equitable.

JURY TRIAL DEMANDED

Dated: February 18, 2016              BY:    **s/ James T. Smith**
                                                              James T. Smith (#0388949)
                                                              HUFFMAN, USEM, CRAWFORD
                                                              & GREENBERG, P.A
                                                              1000 Water Park Place
                                                              5101 Olson Memorial Highway
                                                              Minneapolis, MN 55422
                                                              (763)-545-2720
                                                              FAX: (763)-545-2350
                                                              Email: James.T.Smith.Law@gmail.com

                                                              Attorneys for Plaintiff

## ACKNOWLEDGEMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney and witness fees may be awarded pursuant to Fed. R. Civ. Pro. § 11 to the party against whom the allegations in this pleading are asserted.

Dated: February 18, 2016            **s/ James T. Smith**
                                    James T. Smith