UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Franco Torrescano DeLaTorre,

        Plaintiff,

v.

        Civil No. 16-235 (JNE/KMM)
        ORDER

Minnesota State High School League, David
Stead, and Craig Perry,

        Defendants.

---

James T. Smith, Huffman, Usem, Crawford & Greenberg, P.A., appeared for Franco Torrescano DeLaTorre.

Kevin M. Beck and Patrick J. Kelly, Kelly & Lemmons, P.A., appeared for Minnesota State High School League, David Stead, and Craig Perry.

---

        This is an action by Franco Torrescano DeLaTorre against the Minnesota State High School League; its executive director, David Stead; and its associate director, Craig Perry (collectively, Defendants). DeLaTorre asserted claims against them under 42 U.S.C. § 1983 (2012) for violations of his right to due process under the Fourteenth Amendment. He also asserted a claim against the League for breach of contract. The action arises out of the determination, at the beginning of the 2015-16 academic year, that DeLaTorre was ineligible to participate in interscholastic varsity athletic competition. Several months later, the League granted him eligibility for the remainder of the academic year. The case is before the Court on Defendants' Motion to Dismiss. For the reasons set forth below, the Court dismisses DeLaTorre's due process claim with prejudice. The Court dismisses his claim for breach of contract without prejudice.

1

# I.    BACKGROUND[1]

DeLaTorre is 18 years old and a junior at Cretin-Derham Hall High School (CDH).  His mother and father were divorced in Mexico in 2003.  In 2012, DeLaTorre, his mother, and his sister moved to the United States with his father's permission.  The same year, his mother and father agreed that he would return to Mexico to live with his father for one year of high school.

DeLaTorre attended ninth grade at CDH.  After he completed ninth grade, his stepfather reviewed League bylaws, which the stepfather found online.  The bylaws reviewed by the stepfather defined a "transfer student" as "one who discontinues enrollment and attendance in any high school, public or non-public, located in a public school district attendance area and enrolls and attends classes in any other high school in Minnesota."[2]

DeLaTorre moved to Mexico in 2014 to live with his father.  He attended tenth grade there.  DeLaTorre decided that he wanted to return to CDH for his junior year and to play soccer for the school.  After he completed tenth grade in Mexico, his mother and father agreed that it was in DeLaTorre's best interest to return to CDH.

---

[1]    The Court excludes the matters outside the pleadings that were presented and considers Defendants' motion as one to dismiss under Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(d).  The background summarizes the allegations of DeLaTorre's Amended Complaint, its attachments, and the exhibits attached to Perry's affidavit.  At the motion hearing, DeLaTorre agreed that the exhibits attached to Perry's affidavit may be considered without transforming the motion into one for summary judgment.

[2]    The definition of "transfer student" reviewed by DeLaTorre's stepfather was outdated.  The operative definition of "transfer student" included a transfer to a high school outside of Minnesota.

2

In spring 2015, DeLaTorre contacted CDH and started the enrollment process.  In July 2015, his stepfather contacted CDH to confirm that DeLaTorre would be eligible to play varsity soccer.

On July 16, 2015, CDH's athletic director wrote to Perry to inform him of DeLaTorre's return to CDH and to confirm DeLaTorre's eligibility for varsity competition at CDH during the upcoming academic year.  On July 20, Perry responded to CDH's athletic director, stating that CDH's eligibility interpretation was incorrect, that DeLaTorre had two transfers, and that DeLaTorre was ineligible to compete at the varsity level at CDH for the 2015-16 academic year.  CDH responded to Perry the same day. CDH disagreed with Perry's determination of ineligibility, noted that the League's bylaws allow a student to use a divorce waiver once during grades 9-12,[3] stated that DeLaTorre had not used the divorce waiver, and indicated that DeLaTorre sought to apply the divorce waiver to his transfer from the school in Mexico to CDH.  The same day, Perry responded, "The divorce custody option is used when [DeLaTorre] transferred to the school in Mexico.  Now he transfers back to your school and he has a one-year varsity competition suspension."

---

[3]     Under certain circumstances, a transfer student is eligible for varsity competition. The League's 2015-16 handbook provides that "[a] student of divorced parents who have joint, legal physical custody of the student, as indicated in the divorce decree, who moves from one custodial parent to the other custodial parent shall be fully eligible at the time of the move" at either "the public school in the new public school attendance area as determined by the district school board where the new residence is located" or "any non-public school"; that "[t]he student may utilize this provision only one time during grades 9-12 inclusive"; and that "[t]he parents must provide proof of joint, legal physical custody as identified in the parents' divorce decree to the activity director in the school the student attends."

On August 5, Perry informed CDH that the League would not consider DeLaTorre's request for a hearing to challenge Perry's determination that DeLaTorre was ineligible for varsity competition until the start of the fall athletic season. The League's policy procedures for determining eligibility of transfer students state that "[t]ransfer eligibility determinations and transfer eligibility appeals can only be submitted to the League after the student has completed the transfer. A transfer is considered complete when the student attends school at the Receiving School or participates in a fall sport practice prior to the first day of school for the school year."

On August 17, which was the first day of the fall athletic season, CDH submitted a student transfer form to the League. On the form, CDH identified DeLaTorre as a transfer student and recited his mother's description of where DeLaTorre had lived and attended school from 2003, when his parents divorced, to 2012, when he moved to the United States. Near the end of the form, CDH indicated that DeLaTorre was ineligible for varsity competition:

> In consideration of all of the above, the designated school representative has determined the student be:
>
> **Ineligible for varsity competition for 100% of the varsity games scheduled for one full calendar year**

Three days later, the League responded to CDH and agreed with the determination of ineligibility.

In addition to the student transfer form, CDH submitted a request for a hearing to the League on August 17. CDH's athletic director submitted the request with the following e-mail to Perry:

I just filled out the online form for . . . DeLaTorre.

On the online form I selected foreign/International: outside of US to Minnesota. [Then] I selected Other since he didn't fit the other options. I pasted the student['s] situation in the text box.

I declared him ineligible to play varsity but eligible to play JV and B.

The student attended CDH as a 9th grader and played 10th grade soccer. He lived with Dad for a year in Mexico and moved back to attend CDH for his junior year. The information as to why he moved to Mexico for one year with his Dad is listed in the attached document. I am requesting a fair hearing for him due to the fact that [he] does not meet the criteria for an appeal.

Attached, you will find 3 documents:

1)      Request for a hearing and the situation regarding why he went to Mexico for a year.

2)      Attached is the divorce decree, first in Spanish and then in English. I am not able to use the divorced parents option to be eligible for varsity competition since the decree does not list the specific language as is needed by the league.

3)      [DeLaTorre's] transcript from his year in Mexico.

On September 2, Perry informed CDH that the request for a hearing was denied and that a letter with additional information would follow in three to five business days.

On September 14, CDH contacted Perry to ask why it had not received the promised letter. DeLaTorre's stepfather made several telephone calls to the League during the week of September 14 to ask why the promised letter had not been provided to CDH. The stepfather also wrote an e-mail to the League on September 16 in which he noted that the promised letter had not been provided, that he was still perplexed by the ineligibility determination and the denial of a hearing, that rules attached to the e-mail

indicated DeLaTorre was not a transfer student because DeLaTorre left Minnesota, and that "the one time exception for a custody situation" should apply.

On September 17, the League sent a letter dated September 10 to CDH via e-mail. In it, Perry wrote that DeLaTorre attended ninth grade at CDH and tenth grade in Mexico; that his biological parents are divorced; that he lives with his mother and family while residing in Minnesota; that he resided with his father when he attended tenth grade in Mexico; that his parents jointly decided to allow him to live with his father and attend tenth grade in Mexico; that he has "two transfers, each with a one year varsity competition suspension"; and that he "is ineligible to compete at the varsity level through the completion of the 2015-2016 school year."  Under "family rationale for League level hearing," Perry wrote that "[t]he parents decided when they divorced that the student at some time in the future would reside with his father in Mexico and attend school in Mexico"; that "[t]he parents made the decision to have the Student live with his father and attend school for the 10th grade, the 2014-2015 school year"; that "[t]he family believes the Student should be eligible because a decision between the Student's divorced parents to allow the student to live with his father in Mexico should not impact his participation eligibility"; and that "[t]he Student's mother believes '. . . the student should not be punished by the fact his parents were divorced, and live in two different countries.'"  Under "discussion," Perry stated that "[t]he intent of the transfer eligibility appeal and hearing process is to provide an opportunity for the review of a student's transfer situation and, upon a showing of special or unusual circumstances that warrant an exception, grant varsity eligibility"; that "[e]very student who transfers is ineligible to

compete at the varsity level for one calendar year beginning with the student's first day of attendance at the new school"; that the League's bylaws "identify conditions under which a transfer student may obtain varsity eligibility"; that League policy "provides six transfer eligibility appeal provisions whereby a school can seek varsity eligibility for a transfer student"; that the League's bylaws provide that "[e]ach time a student transfers and the conditions identified in MSHSL bylaw provisions 111.1.B are not met the student will be ineligible for varsity competition for a period of one . . . calendar year beginning with the first day of school at the new school"; and that "[a] decision to change schools was based on an agreement between the Student's parents."  Perry concluded:

> The Student's parents made a decision they felt best served the Student.  The parents agreed to allow their son to move from Minnesota to Mexico to live with his father for one year.  However, that family decision does not constitute special or unusual circumstances justifying the waiver of the transfer and residence bylaw.  Therefore, the request for a hearing is denied. . . . DeLaTorre will be eligible to compete at the varsity level at the beginning of the 2016-2017 school year.

On September 17, DeLaTorre's stepfather responded to the denial of the hearing by sending an e-mail to Perry and Stead.  The stepfather explained that DeLaTorre was not a transfer student because DeLaTorre had transferred to a school outside of Minnesota and that, even if DeLaTorre were a transfer student, DeLaTorre would be eligible to use the one-time divorce waiver.  The next day, the stepfather reached out to legislators regarding the denial of DeLaTorre's request for a hearing.  From September 21 to 24, the stepfather made daily telephone calls to the League and asked to speak with Stead.

The stepfather and Stead had a telephone conversation on September 24.  The stepfather read language regarding a "transfer" to Stead, who stated his disagreement with that language.  Later that day, the stepfather sent an e-mail to Stead that contained a link to the League's website.  The link contained the "transfer" language cited by the stepfather.

Stead responded by sending an e-mail to the stepfather later that day.  Stead wrote:

> The information you provided is different from the language in the most current MSHSL Official Handbook.  A student's eligibility is based on the most current information found in the MSHSL Official Handbook located in the office of the activity director in the school your child attends or on-line at www.mshsl.org.  If you choose on-line, you must click on the words Handbook, 100 Bylaws – General Eligibility, and Bylaw 111-Transfer and Eligibility.  It is this information your school's activity director uses for purposes of eligibility.  The activity director at the school your child attends always has the most current MSHSL information at hand and must accurately provide that eligibility information to parents when questions about school transfers and subsequent eligibility are asked.
>
> Given your email below, it appears as if you googled a question about an eligibility transfer bylaw rather than reference the most current MSHSL Official Handbook on-line or speak directly with your school's athletic director for direction.  The transfer definitions you cite were updated in advance of the 2013-2014 school year, the year your child was entering 9th grade, and they remain consistent today as they were at that time.  In order to ensure that future inaccuracies about the transfer definitions different from what appears in the most current MSHSL Official Handbook do not confuse people, the reference cited below is now inactive.
>
> However, I have spoken with Craig Perry, and because the MSHSL Eligibility Committee will meet on October 1, 2015, the information you have already provided will be shared with the committee for their consideration.  If there is additional documentation, other than what has already been sent to the League office, please feel free to provide it to me by email not later than 12:00 noon on September 30, 2015 and I will see that the committee will have it for their review and consideration.

Stead invited the stepfather to speak to the League's eligibility committee on October 1.

The stepfather continued to request a hearing instead of simply speaking to the eligibility committee.  On September 25, Stead agreed that the League would provide a hearing to DeLaTorre on October 6.

DeLaTorre, his stepfather, his attorney, CDH's athletic director, Perry, and the League's attorney appeared before a hearing officer on October 6.  At the hearing, DeLaTorre's attorney argued Perry's determination that the divorce waiver was used when DeLaTorre moved to Mexico had no merit because DeLaTorre never elected to use the waiver while he was in Mexico.  The applicable bylaw provides that "the student may utilize this provision only one time during grades 9-12 inclusive."  The League argued that no student had ever been allowed to determine when the divorce waiver would be applied in connection with a transfer and that a longstanding interpretation required application of the waiver to the first transfer.  DeLaTorre's attorney asserted that the League had not mentioned its longstanding interpretation in the communications to date.

The day after the hearing, DeLaTorre's attorney requested permission to introduce the findings, conclusions, and recommendations of a hearing officer in a separate case to rebut the League's assertion that no student had been allowed to decide when the divorce waiver applied.  DeLaTorre's attorney withdrew the request after the hearing officer declined to set a deadline for the League to respond to the request.[4]

On October 12, the hearing officer recommended that the League affirm the decision that DeLaTorre is not eligible for varsity competition for the 2015-16 academic

---

[4]     The League submitted a redacted version of the hearing officer's decision in the separate case.  The decision did not give a student the right to decide when the divorce waiver applies.

year.  The hearing officer made findings of fact regarding DeLaTorre's move from Mexico to Minnesota with his mother, his return to Mexico to live with his father, and his return to Minnesota to attend eleventh grade at CDH.  After quoting the definition of a "transfer student" in the League's bylaws, the hearing officer stated that "[t]here is no dispute that [DeLaTorre] is a 'transfer student.'"  The hearing officer concluded that DeLaTorre did not qualify for a waiver of the transfer rule.

Perry sent the hearing officer's decision to CDH and DeLaTorre's mother and stepfather and advised them that the League's board would formally act on the recommendation on December 3.  DeLaTorre's attorney sought permission, which was granted, to speak to the League's eligibility committee, which was scheduled to review the recommendation before the board took action on it, on December 3.

DeLaTorre and his attorney spoke to the eligibility committee on December 3. They learned later that the League decided to defer action on the recommendation to its next meeting in early January 2016.  At that meeting, the League's eligibility committee voted unanimously to affirm the hearing officer's decision.  The eligibility committee also voted to grant DeLaTorre varsity eligibility for the remainder of the 2015-16 academic year based on the following reasons: (1) DeLaTorre's "mother and father held a good faith belief that the MSHSL bylaw provisions would not be applied for a student transferring from a MSHSL member school to a school in Mexico, which is not accurate"; (2) DeLaTorre's "step-father believed outdated bylaws he found on the internet still applied for his step-son['s] transfers, which is not accurate, and he also indicated he did not contact the athletic director at [CDH] to confirm his eligibility

interpretation"; and (3) "[b]ased on the misunderstandings of the MSHSL bylaws, by the student's mother, father and step father, the MSHSL Eligibility Committee made a motion to grant varsity eligibility."  The motion passed by a 3-2 vote.

The eligibility committee's decision to grant varsity eligibility to DeLaTorre was subject to approval by the League's board.  On February 4, 2016, the League's board approved the eligibility committee's decision to grant DeLaTorre varsity eligibility.

## II.    DISCUSSION

In ruling on a motion to dismiss for failure to state a claim, a court accepts the facts alleged in the complaint as true and grants all reasonable inferences in favor of the plaintiff.  *Varga v. U.S. Bank Nat'l Ass'n*, 764 F.3d 833, 838 (8th Cir. 2014).  Although a pleading is not required to contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "The court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record."  *Mills v. City of Grand Forks*, 614 F.3d 495, 498 (8th Cir. 2010).  "Documents necessarily embraced by the pleadings include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading.'"  *Ashanti v. City of Golden Valley*,

666 F.3d 1148, 1151 (8th Cir. 2012) (quoting *Kushner v. Beverly Enters., Inc.*, 317 F.3d

820, 831 (8th Cir. 2003)).

## A.    Count One - Due Process

In Count One of his Amended Complaint, DeLaTorre alleged that Defendants

violated his right to due process under the Fourteenth Amendment.  Defendants asserted

that Count One should be dismissed because DeLaTorre "cannot show that he has a

constitutionally protected property or fundamental liberty interest to participate in

interscholastic *varsity* athletics."

### *Procedural due process*

"To make out a claim for a violation of procedural due process, the plaintiff has

the burden of showing that '(1) he had a life, liberty, or property interest protected by the

Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did

not afford him adequate procedural rights prior to depriving him of the property

interest.'"  *Stevenson v. Blytheville Sch. Dist. # 5*, 800 F.3d 955, 965-66 (8th Cir. 2015)

(quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)).

DeLaTorre asserted that Minnesota recognizes a property interest in "varsity athletic

eligibility" and that he has "a constitutionally protected property interest in

interscholastic athletic eligibility."  He reasoned that his property interest in education

"extends to participation in interscholastic sports."[5]

---

[5]    Defendants never prohibited DeLaTorre from participating in interscholastic
sports.  From August 2015 to February 2016, the ineligibility determination precluded
DeLaTorre from interscholastic varsity athletic competition.

"Property interests, of course, are not created by the Constitution.  Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972); *accord Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005) ("'To have a property interest in a benefit, a person clearly must have more than an abstract need or desire' and 'more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it.'" (quoting *Roth*, 408 U.S. at 577)); *Stevenson*, 800 F.3d at 967-68.  "Although the underlying substantive interest is created by 'an independent source such as state law,' *federal constitutional law* determines whether that interest rises to the level of a 'legitimate claim of entitlement' protected by the Due Process Clause."  *Castle Rock*, 545 U.S. at 757 (quoting *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978)); *accord Stevenson*, 800 F.3d at 968.

The Minnesota Constitution states that "it is the duty of the legislature to establish a general and uniform system of public schools."  Minn. Const. art. XIII, § 1.  Minnesota has established a system of public schools.  *See* Minn. Stat. ch. 120A to ch. 129C (2014) (Education Code).  "All schools supported in whole or in part by state funds are public schools."  *Id.* § 120A.20, subd. 1.  Admission to a public school is free to any person who resides in the district that operates the school, is less than 21 years old, and satisfies certain minimum age requirements.  *Id.*  "Every child between seven and 17 years of age must receive instruction unless the child has graduated."  *Id.* § 120A.22, subd. 5.

"Although a state 'may not be constitutionally obligated to establish and maintain a public school system,' once it has done so, 'the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause.'" *Stevenson*, 800 F.3d at 968 (quoting *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). DeLaTorre's legitimate entitlement to a public education is a property interest that is protected by the Due Process Clause.

The parties have not cited, and the Court has not found, any statute, rule, or case that definitively includes eligibility for interscholastic varsity athletic competition within the right to a public education under Minnesota law.[6] *Cf. G.H. ex rel. Mr. H. v. Minn. State High Sch. League*, No. C2-02-462, 2002 WL 31165068, at *3 (Minn. Ct. App. Oct. 1, 2002) ("There is a split of authority on the issue of whether participation in interscholastic activities is a constitutionally protected interest, and there is no Minnesota decision on this issue.").[7] The Minnesota Supreme Court's opinion in *Thompson v. Barnes*, 200 N.W.2d 921 (Minn. 1972) (per curiam), is the foundation of most cases that have addressed similar issues.

In *Thompson*, the plaintiff was suspended for one year from all interscholastic activities sponsored by the League because of his admitted violation of the League's alcohol rule. 200 N.W.2d at 922. The plaintiff moved to temporarily enjoin enforcement

---

[6]     DeLaTorre acknowledged that "the issue has not been definitely decided."

[7]     "[U]npublished opinions of the court of appeals are not precedential." *Vlahos v. R&I Constr. of Bloomington, Inc.*, 676 N.W.2d 672, 676 n.3 (Minn. 2004); *accord Skyline Vill. Park Ass'n v. Skyline Vill. L.P.*, 786 N.W.2d 304, 309 (Minn. Ct. App. 2010) ("Unpublished opinions are of persuasive value '[a]t best' and not precedential." (alteration in original)).

of the alcohol rule, and the district court denied the motion. *Id.* at 922-23. Reviewing a

record it described as "wholly unsatisfactory" and "impossible," the Minnesota Supreme

Court held that the district court had not abused its discretion by denying the motion. *Id.*

at 923, 927. Noting that "the issue of plaintiff's right to a temporary injunction against

enforcement of the alcohol rule appears, from every practical standpoint, to be now, and

to have been when this appeal was presented, moot," the supreme court characterized

participation in interscholastic activities as "an important and integral facet of the youth's

education process":

> In light of the brief and oral argument presented to this court by
> plaintiff, if we were to take the most liberal view of plaintiff's pleadings
> and affidavits and assume that the suspension deprived Craig of expected
> participation in interscholastic activities, which is today recognized (as did
> defendants in their oral argument) as an important and integral facet of the
> youth's education process, we would serve no useful function by reversing
> the lower court and issuing a temporary injunction at this time.

*Id.* at 926 n.11 (citations omitted).

Several months after *Thompson* was decided, the Eighth Circuit made a similar

observation in *Brenden v. Independent School District 742*, 477 F.2d 1292 (8th Cir.

1973). In *Brenden*, the plaintiffs brought an action under § 1983 to enjoin enforcement

of a rule promulgated by the League that barred females from participating with males in

high school interscholastic athletics. 477 F.2d at 1294. The plaintiffs claimed the rule

discriminated against females in violation of the Equal Protection Clause of the

Fourteenth Amendment. *Id.* After a trial, the district court ordered that the plaintiffs be

declared eligible to compete and that the League be enjoined from sanctioning schools

for complying with the order, and the Eighth Circuit affirmed. *Id.* at 1294-95. After

emphasizing that it was not "faced with the question of whether the schools can fulfill their responsibilities under the Equal Protection Clause by providing separate but equal facilities for females in interscholastic athletics" and that, "because the sports in question are clearly noncontact sports, [it] need not determine if the High School League would be justified in precluding females from competing with males in contact sports such as football," the Eighth Circuit considered the character of the classification, the individual interests affected by the classification, and the governmental interests asserted in support of the classification. *Id.* at 1295-96. In its consideration of the plaintiffs' interest in interscholastic athletics, the Eighth Circuit stated that "[d]iscrimination in high school interscholastic athletics constitutes discrimination in education"; quoted footnote 11 of *Thompson*; and noted that the state board of education had emphasized "[t]he importance of interscholastic athletics for females as part of the total educational process." *Id.* at 1297-99. The Eighth Circuit concluded "that at the very least, the plaintiffs' interest in participating in interscholastic sports is a substantial and cognizable one. Thus, this case is properly before a federal court to determine if the High School League's actions are in conformity with the Equal Protection Clause." *Id.* at 1299.

This District has considered claims similar to the one asserted by DeLaTorre on several occasions, and its decisions are not uniform. In *Giblin v. Minnesota State High School League*, Civil No. 4-81-767, 1982 WL 963044 (D. Minn. Jan. 15, 1982), the district court preliminarily enjoined the League from disallowing, on the basis of its transfer and residence rule, two students from participating in any interscholastic activities regulated by the League. 1982 WL 963044, at *4. The district court

acknowledged that "the Minnesota Supreme Court has not explicitly recognized a property right under Minnesota law to participate in interscholastic activities." *Id.* at *3. "Review of various authorities reveal[ed]" to the district court "that eligibility to participate in interscholastic sports is part and parcel of the right to education." *Id.* The district court cited an opinion of the Minnesota Attorney General, which determined interscholastic sports to be co-curricular in some situations; the Minnesota Supreme Court's acknowledgement in *Thompson* that participation in interscholastic activities has been recognized as an important and integral facet of the youth's educational process; the National Federal of State High School Associations' statement "that its programs are administered with the basic belief that interscholastic athletics 'shall be an integral part of the total secondary school educational program'"; and the due process procedures promulgated by the League itself.[8] *Id.*

---

[8]      In *Giblin*, the district court stated: "[T]he League itself has promulgated due process procedures which allow review and appeal of decisions relating to eligibility. These rules create an expectation of continued eligibility for interscholastic sports sufficient to require that procedural due process be afforded before suspension."  1982 WL 963044, at *3 (citing *Wilson v. Robinson*, 668 F.2d 380 (8th Cir. 1981)).  Relying on this statement, DeLaTorre argued that the League's due process procedures "create an expectation of continued eligibility for interscholastic sports sufficient to require that procedural due process be afforded before suspension."  DeLaTorre failed to acknowledge that *Wilson*, the case on which *Giblin* relied, "has effectively been overruled insofar as it holds that 'procedural rights' alone can create an independent substantive property right to continued employment when none would otherwise exist." *Stow v. Cochran*, 819 F.2d 864, 867-68 (8th Cir. 1987); *accord Akeyo v. O'Hanlon*, 75 F.3d 370, 374 & n.2 (8th Cir. 1996); *see Mulvenon v. Greenwood*, 643 F.3d 653, 658 (8th Cir. 2011) ("We have previously held that the existence of procedures governing one's continued employment cannot, standing alone, create a property right to continued employment.").  Thus, the Court rejects DeLaTorre's argument.

In *Peterson v. Independent School District No. 811*, 999 F. Supp. 665 (D. Minn. 1998), a school district suspended and "expelled" the plaintiff from November 23 to December 7, 1994, for the plaintiff's alleged violation of a school's dangerous weapons policy. 999 F. Supp. at 668-69.  In addition, the plaintiff was prohibited from participating in extra-curricular activities through January 2, 1995. *Id.* at 669.  Later, the prohibition on participation in extra-curricular activities was extended by approximately two months. *Id.* at 673.  The plaintiff claimed the school district violated his right to due process, and the district court entered summary judgment in favor of the school district. *Id.* at 673-74.  Citing the Eighth Circuit's statement in *McFarlin v. Newport Special School District*, 980 F.2d 1208, 1211 (8th Cir. 1992), that "there is no clearly established right of parents to have their children compete in interscholastic athletics," the district court concluded that "no property interest exists entitling plaintiff to due process before being excluded from extracurricular activities." *Peterson*, 999 F. Supp. at 674.

In *J.K. ex rel. Kaplan v. Minneapolis Public Schools (Special School District No. 1)*, 849 F. Supp. 2d 865 (D. Minn. 2011), a school district notified the plaintiff he would be transferred from one high school to another within the district, and the plaintiff moved for a preliminary injunction to prevent the district from transferring him.  849 F. Supp. 2d at 867.  The plaintiff claimed that the district violated his right to procedural due process and moved for a preliminary injunction. *Id.* at 870.  He claimed that the proposed transfer would deprive him of three distinct interests, including "his property interest in participating in interscholastic sports." *Id.* at 871.  The district court described the issue of "[w]hether Minnesota law provides [the plaintiff] a property interest in

participating in varsity interscholastic sports" as "a difficult question." *Id.* at 875. After noting that "[s]tate and federal courts have, by a wide margin, rejected the argument that students have a constitutionally protected property interest in participating in extracurricular activities such as interscholastic sports" and reviewing *Peterson*, *Giblin*, *Thompson*, and opinions of the Minnesota Attorney General, the district court stated the plaintiff "has a strong argument that, under Minnesota law, his property interest in an education extends to participation in interscholastic sports." *Id.* at 875-77. The district court denied the plaintiff's motion, reasoning that the plaintiff did not have a property right to participate in interscholastic sports at a particular school and that the school district's transfer only prevented the plaintiff from playing sports at a particular school. *Id.* at 877-78.

In *W.D. ex rel. M.J.D. v. Minnesota State High School League*, Civil No. 12-2892, 2012 WL 5585514 (D. Minn. Nov. 29, 2012), a student and his parents moved for preliminary injunctive relief to enjoin the League from enforcing its determination that the student was ineligible to compete in varsity hockey during his junior year. 2012 WL 5585514 at *1. The district court granted their motion. *Id.* Citing *J.K.*; *Giblin*; *Thompson*; Minn. Stat. § 128C.03, which requires the League to "adopt procedures to ensure public notice of all eligibility rules and policies that will afford the opportunity for public hearings on proposed eligibility rules"; and opinions of the Minnesota Attorney General, the district court concluded that the student had "a probability of successfully establishing that he has a constitutionally protected property interest in interscholastic athletic eligibility."

19

In *H.R. ex rel. S.R. v. Minnesota State High School League*, Civil No. 13-16, 2013 WL 147416 (D. Minn. Jan. 14, 2013), the League determined that a student was ineligible to compete in interscholastic varsity athletics during a school year.  2013 WL 147416, at *1.  The student, by and through his parents, claimed the League violated his right to due process and moved for a preliminary injunction.  *Id.* at *2 & n.2.  The district court denied the motion.  *Id.* at *1.  The student and his parents asserted that the student "possesses a property interest in interscholastic varsity athletics."  *Id.* at *3.  Stating that "[i]t is unclear whether interscholastic athletic eligibility is a constitutionally-protected property interest," the district court declined to reach the issue "because plaintiffs cannot show that they are likely to succeed on the merits of their due process claim."  *Id.* at *3 n.4.

As noted above, several cases that have addressed whether Minnesota recognizes a property interest in eligibility for interscholastic varsity athletics did so in the context of motions for preliminary injunctive relief.  The cases are not adjudications on the merits. *See Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999) ("Of course, neither the District Court's denial of the motion [for a preliminary injunction] nor our affirmation of the District Court's judgment will bind the District Court or the parties in any further proceedings in this case, for adjudication of a motion for a preliminary injunction is not a decision on the merits of the underlying case."); *Thompson*, 200 N.W.2d at 927 ("Ordinarily, neither a lower court nor this court is called upon in such a proceeding to adjudicate finally the issues raised in the complaint, and denying a temporary injunction neither establishes the law of the case nor constitutes an

adjudication on the merits of the issues raised in the complaint.").  In the absence of a statute, regulation, or case that definitively includes eligibility for interscholastic athletic competition within the right to a public education under Minnesota law, the Court concludes that the right to a public education under Minnesota law does not include eligibility for interscholastic varsity athletic competition.

Even if DeLaTorre's legitimate entitlement to a public education[9] includes eligibility for interscholastic varsity athletic competition, he has not been denied a property right that is protected by the Due Process Clause.  "[U]nder *Goss*, the property interest which is protected by the Due Process Clause is the right to participate in the entire educational process and not the right to participate in each individual component of that process."  *Stevenson*, 800 F.3d at 968 (quoting *Mazevski v. Horseheads Cent. Sch. Dist.*, 950 F. Supp. 69, 72 (W.D.N.Y. 1997)).  At no time did Defendants prevent DeLaTorre from participating in the entire educational process.  Notwithstanding the ineligibility determination, he remained free to attend class, to engage in school activities, and to participate in all interscholastic athletics except varsity competition.

Even if the ineligibility determination deprived DeLaTorre, for a time,[10] of a constitutionally protected property interest,[11] he received sufficient process given the

---

[9]    CDH is a private high school.

[10]    DeLaTorre did not seek expedited relief from this Court.  *Cf. H.R.*, 2013 WL 147416 (student who earned place on varsity hockey team was determined to be ineligible; hearing before independent hearing officer took place on December 19, 2012; action and motion for preliminary injunction filed on January 2, 2013; order issued on January 14, 2013); *W.D.*, 2012 WL 5985514 (independent hearing officer submitted

nature of the interest at issue.  "'The fundamental requirement of due process is the

opportunity to be heard "at a meaningful time and in a meaningful manner."'  The nature

of this constitutional guarantee is flexible, however, and varies with the particular

situation."  *Wooten v. Pleasant Hope R-VI Sch. Dist.*, 270 F.3d 549, 551 (8th Cir. 2001)

(citation omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).

     In *Wooten*, a high school student was expelled from the school's softball team

after she missed a game without giving the coach notice she would be absent.  *Id.* at 550.

A couple of days later, the district superintendent, the principal, and the coach met with

---

recommendation on October 29, 2012; hockey season began on November 12, 2012; action filed on November 15, 2012; order issued on November 29, 2012).

[11]    In *Kroupa v. Nielsen*, 731 F.3d 813 (8th Cir. 2013), a member of 4–H was barred from showing livestock at 4–H exhibitions because the member allegedly misrepresented the ownership of her winning entry at a state fair.  713 F.3d at 815.  The member was given neither notice nor an opportunity to be heard before the punishment's imposition.  *Id.*  The member's father brought an action under § 1983, claiming a denial of the member's constitutional right to procedural due process.  *Id.*  The district court preliminarily enjoined 4–H officials from interfering with the member's participation in 4–H activities, and the Eighth Circuit affirmed.  *Id.* at 815-16.  "The predominant injury to [the member] at issue in this case was the harm to her reputation for honesty and integrity when she was publicly banned from government-sponsored 4–H activities for cheating."  *Id.* at 818.  The court of appeals rejected the officials' comparison of 4–H activities to interscholastic athletics:

>     Defendants argue that participation in 4–H activities is no more constitutionally protected than participation in interscholastic athletics or extracurricular school activities that have been denied protection in cases such as *Walsh v. La. High Sch. Athletic Ass'n*, 616 F.2d 152, 159–60 (5th Cir. 1980), *cert. denied* 449 U.S. 1124 (1981); *see In re United States ex rel. Mo. State High Sch. Activities Ass'n*, 682 F.2d 147, 153 n.8 (8th Cir. 1982).  But the analogy is not apt and the governing principles far from clear.

*Kroupa*, 731 F.3d at 820.

the student and her parents.  *Id.*  The coach explained why she had expelled the student

from the team, and the student was given an opportunity to respond.  *Id.*  After the

meeting, the school district upheld the coach's decision to expel the student from the

team.  *Id.*  Later, the student brought an action under § 1983 against the school district

and the coach, claiming that her constitutional right to due process was violated when she

was expelled from the team.  *Id.* at 550-51.  The district court dismissed the claim for

failure to state a claim upon which relief can be granted, and the Eighth Circuit affirmed.

*Id.* at 550.  The court of appeals "did not find it necessary to reach" the issue of whether

the student's "right to participate in the softball team is a property interest protected by

the Due Process Clause of the Fourteenth Amendment."  *Id.* at 551.  Assuming that it

was, the Eighth Circuit concluded "she received an adequate amount of process in light

of the deprivation at issue."  *Id.*  The court explained:

> A post-deprivation hearing can be sufficient process.  The meeting was held
> on Monday, the first weekday following the game.  This was the earliest
> reasonable date for a hearing.  At that meeting, Ms. Wooten was informed
> of the reasons for the expulsion, and thereby given notice of the charges
> against her.  Ms. Wooten also received an opportunity to be heard.  She was
> allowed to confront her coach and explain her version of why she was
> absent to two key school administrators, the superintendent and the
> principal.  In light of these facts, the due process claim must fail.  Pleasant
> Hope School District gave her a meaningful opportunity to be heard,
> especially when we consider the nature of the interest involved.

*Id.* (citation omitted).

Here, DeLaTorre had notice of the League's eligibility bylaws.  The League

published them on the Internet.  That his stepfather found an outdated definition of

"transfer student" on the League's website does not diminish the notice given by the

League of its current bylaws.[12]  DeLaTorre was given a meaningful opportunity to be
heard before the start of the fall athletic season, at the start of the season, and in the
weeks and months that followed.  As recounted above in greater detail, DeLaTorre
contacted CDH in the spring of 2015 and started the enrollment process.  In July 2015,
his stepfather contacted CDH to confirm that DeLaTorre would be eligible to play varsity
soccer.  In turn, CDH's athletic director and Perry exchanged several e-mails that month
about DeLaTorre's eligibility, including e-mails that addressed the divorce waiver.  At
the start of the fall athletic season, CDH submitted a transfer student form to the League,
as well as a request for a hearing with additional information about the divorce of
DeLaTorre's parents and the year he spent in Mexico.  A few weeks later, the League
denied the request for a hearing.  In September 2015, DeLaTorre's stepfather
communicated with the League on numerous occasions by telephone and e-mail.
Eventually, the League granted DeLaTorre a hearing, which was held in early October
2015.  Approximately two months later, DeLaTorre and his attorney addressed the
League's eligibility committee.  In February 2016, the League granted DeLaTorre varsity
eligibility for the remainder of the 2015-16 academic year.  DeLaTorre received
sufficient process that satisfied whatever requirements the Due Process Clause might
impose.  *Cf. Bethel Sch. Dist. No. 403 v. Fraser*, 478 U.S. 675, 686 (1986) ("Given the
school's need to be able to impose disciplinary sanctions for a wide range of
unanticipated conduct disruptive of the educational process, the school disciplinary rules

---

[12]     The definition of "transfer student" cited by DeLaTorre's stepfather in his e-mail
to Stead on September 24, 2015, came from a redlined version of the League's bylaw
dated February 2007.

need not be as detailed as a criminal code which imposes criminal sanctions."); *Wood v. Strickland*, 420 U.S. 308, 326 (1975) ("Public high school students do have substantive and procedural rights while at school. But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations." (citations omitted)).

*Substantive due process*

DeLaTorre claimed that the decision to deny him eligibility for interscholastic varsity athletic competition in the fall of 2015 violated his right to substantive due process. Defendants did not deprive DeLaTorre of a constitutionally protected property right or a fundamental constitutional right. *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education, of course, is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *Stevenson*, 800 F.3d at 968. "Merely labeling a governmental action as arbitrary and capricious, in the absence of the deprivation of life, liberty, or property, will not support a substantive due process claim." *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc). That DeLaTorre's move to Mexico and return to CDH were, according to him, "completely unrelated to athletics" did not render the ineligibility determination arbitrary. *See Mo. State High Sch. Activities Ass'n*, 682 F.2d at 152-53 (noting that a "transfer rule is claimed to be over-inclusive because it reaches many transfers which do not involve the harms it is designed to prevent" and stating that "[o]ur equal protection analysis reveals that the rule is not arbitrary"). "Only in the rare situation when the state action is 'truly egregious and extraordinary' will a

substantive due process claim arise." *Winslow v. Smith*, 696 F.3d 716, 736 (8th Cir. 2012) (quoting *Strutton v. Meade*, 668 F.3d 549, 557 (8th Cir. 2012)).  This is not such a case.  The Court dismisses Count One insofar as DeLaTorre asserted Defendants violated his right to substantive due process.

**B.      Count Two - Breach of Contract**

Count Two of DeLaTorre's Amended Complaint, which is a claim against the League for breach of contract, is within the Court's supplemental jurisdiction.  *See* 28 U.S.C. § 1367(a) (2012).  A district court may decline to exercise supplemental jurisdiction over a claim if it "has dismissed all claims over which it has original jurisdiction." *Id.* § 1367(c)(3).  Having dismissed DeLaTorre's due process claim, the Court declines to exercise supplemental jurisdiction over his claim for breach of contract. *See Mountain Home Flight Serv., Inc. v. Baxter Cnty.*, 758 F.3d 1038, 1045 (8th Cir. 2014); *Hervey v. Cnty. of Koochiching*, 527 F.3d 711, 726-27 (8th Cir. 2008).  The Court dismisses Count Two without prejudice and denies as moot the motion to dismiss Count Two for failure to state a claim upon which relief can be granted.

### III.    CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1.      Defendants' Motion to Dismiss [Docket No. 6] is GRANTED IN PART and DENIED IN PART.

2.      Count One of DeLaTorre's Amended Complaint is DISMISSED WITH PREJUDICE.

3.      Count Two of DeLaTorre's Amended Complaint is DISMISSED
        WITHOUT PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 16, 2016

                                        s/Joan N. Ericksen
                                        JOAN N. ERICKSEN
                                        United States District Judge